Special



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL



Hon. Chas. A. Tosch
County Auditor
Records Bldg.
Dallas, Texas

Dear Sir:

Opinion No. O-6257

Re: Under what circumstances does the Commissioners' Court have the power to order a cancellation or reduction in the assessed valuation of property after the Court has ceased to sit as a Board of Equalization, and has approved such assessments for the year for which they were made, and after the taxes based on such valuation have become delinquent?

Your letter of October 6, 1944, presents for the opinion of this department the extent of the authority of the Commissioners Court, sitting as a Board of Equalization, to change assessments under certain conditions stated in your request, which we summarize as follows:

(1) The Tax Assessor has presented to the Commissioners Court of Dallas County the recommendation on some two hundred or more pieces of real estate, recommending to the Court a reduction in the assessments pertaining to said property of an aggregate amount in excess of $550,000.;

(2) Various reasons were assigned by the Assessor for the foregoing recommendation, such as "to meet the city of Dallas values"; "to meet the values used by the town of Highland Park, the town of University Park, or Highland Park Independent School District"; "arbitrarily assessed"; "overflow land"; "improvements built of old material"; "vacant lots, no improvement"; "equalize with similar property in same survey"; "and house 54 years old in bad condition"; "raised arbitrarily in 1942";

(3) That the assessments involved are for the years 1942 and 1943;

...TATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Chas. A. Tosch, page 2

(4) That in each case the owner did not render the property for taxation, but the assessment was made by the Assessor;

(5) Such assessments were made by the Assessor in good faith, taking into consideration the assessed values of surrounding property upon such general information as he had;

(6) Apparently, the same reason for the recommendation by the Assessor for a cancellation or reduction in the assessments was that the assessments were excessive;

(7) The regularity of the procedure pursued by the Assessor in making the assessment is not questioned;

(8) That the Commissioners Court complied with the law in approving the Assessor's rolls in which the assessments here involved are listed;

(9) That the taxes involved based upon said assessments had become delinquent before protest was made by the owners that the assessments were excessive.

Article 7206, V. R. C. S., as to the Commissioners Court convening and sitting as a Board of Equalization, among other things provides the following:

Shall examine, equalize and correct assessments made by the assessor, and when so revised, equalized, and corrected, the same shall be approved."

Article 7218, V. R. C. S., provides as follows:

"The Assessor of Taxes shall submit all the lists of property rendered to him prior to the first Monday in June to the Board of Equalization of his County on the first Monday in June or as soon thereafter as possible, for their inspection, approval, correction or equalization. After said Board shall have returned the corrected and approved list of taxable property the assessor of taxes shall proceed to assess all the unrendered property of his county as provided in this Article, and shall proceed to make out and prepare his rolls or books of all real or personal property listed to him in the form and manner prescribed by the Comptroller." (Emphasis ours)

Hon. Chas. A. Tosch, page 3

Article 7220 V. R. C. S. provides:

"The Assessor of Taxes shall after his list of
unrendered, real and personal property shall have been
examined, corrected and approved by the Board of Equali-
zation as provided by law, prepare and make out his rolls
or books of all unrendered real and personal property
listed by him in the manner and form prescribed by the
Comptroller."

There are two assessment rolls, the rendered and
the unrendered, fixing taxable liability, and if the require-
ments of the statute are followed, one is just as valid as
the other, and each constitutes the basis upon which the
Tax Collector proceeds to collect the taxes assessed against
the owner. Article 7253, V. R. C. S., provides:

"When any tax collector shall have received the
assessment rolls or books of the county, he shall
receipt to the commissioners court for the same; and
said rolls or books shall be full and sufficient author-
ity for said collector to receive and collect the taxes
therein levied."

The foregoing statutes comprehend the duties and
powers of the Tax Assessor and the Commissioners Court,
sitting as a Board of Equalization, insofar as pertinent
to the inquiry before us. The decisions of the Commissioners
Court, sitting as a Board of Equalization within the purview
of its jurisdiction, in the absence of fraud or other patent
violations of the law, are final and not subject to collateral
attack. This has long been the settled law of this State.
Two rather recent cases, namely, State et al. v. Houser,
(Supreme Court of Texas) 156 S. W. 968, and Vickery v. State
(Com. App.) 158 S. W. (2d) 760, so hold. We quote from the
first case mentioned as follows:

"Our courts have repeatedly held that the decisions
of tax boards in the matter of valuation are quasi-
judicial in nature; and, therefore, in the absence of
fraud or other obvious violation of the law, such deci-
sions are not subject to collateral attack. It has
also been held that such valuations will not be set
aside merely upon a showing that the same are in fact
excessive. If a board fairly and honestly endeavors
to fix a just valuation for taxing purposes, a mistake
on its part under such circumstances is not subject to
review by the courts. . . ."

And the second case mentioned is as follows:

" . . . . The commissioners court, sitting as a
board of equalization, is a quasi-judicial body.
Its powers and duties are enumerated by the statutes,
Articles 7206, 7211, and 7212, Vernon's Annotated
Civil Statutes, and is the method prescribed by the
legislature to carry out the constitutional provision
that taxation shall be equal and uniform.  In order to
set aside the findings of the board of equalization it
is necessary to show either that the board had not
jurisdiction, (Ward County v. Weatz, Tex. Civ. App.,
69 S. W. 2d 571; City of El Paso v. Howze, Tex. Civ. App.,
248 S. W. 99, writ of error refused) or that the board
acted unlawfully to the prejudice of the complainant.
Zachary v. City of Uvalde, Tex. Com. App., 42 S. W. 2d
417 . . . . "

By an amendment to the Constitution in 1891,
appellate jurisdiction and general supervisory control over
the County Commissioners Court is conferred upon the District
Court in the following language:

—  "The District Court shall have appellate jurisdic-
tion and general supervisory control over the county
commissioners court, with such exceptions and under
such regulations as may be prescribed by law."  Art. 5,
Sec. 8.

No method of appeal has been prescribed by statute,
and the District Court exercises its jurisdiction to review
the action of the Commissioners Court by original proceedings
instituted by complaining taxpayers, or by claimed illegality
on the part of the Board, asserted as a defense to suit by the
State for delinquent taxes.

This implies that the Commissioners Courts exercise
judicial power.  Indeed such power has been expressly conferred
under the Constitution by Section 1, Art. 5, reading in part as
follows:

"The judicial power of this State shall be vested
in one supreme court, in courts of civil appeals, in a
court of criminal appeals, in district courts, in county
courts, in commissioners courts, in courts of justices of
the peace and such other courts as may be provided by law."
(Emphasis ours)

The jurisdiction of the Commissioners Court is defined in the latter part of Sec. 18 of said Article 5, supra, in the following words:

"The county commissioner so chosen, with the county judge as presiding officer, shall compose the county commissioners court, and shall exercise such powers and jurisdiction over all county business as is conferred by this constitution and the laws of the state, or may be hereafter prescribed." (Emphasis ours)

We think, however, there is an express limitation upon the jurisdiction thus conferred, that is, it must be "county business." When acting within the scope of the jurisdiction thus conferred such judgments import verity, and are not subject to collateral attack.

In a former opinion of this department, No. O-2912, what constitutes "county business" has been well expressed, and we quote from said opinion as follows:

"The term 'county business' should be given a broad and liberal construction, so as not to defeat the purposes of the law.

"We are of the opinion that the matter of examining, investigating and considering an assessment of taxes, and determining whether the same is invalid or not; and, if found to be invalid, to do the things as authorized by law to have property covered thereby re-assessed in such manner as that the taxes thereon may be collected, -all pertains to "county business." It would seem that it is as much "county business" to examine into, ascertain and determine an assessment to be invalid and to have the same re-assessed in a valid manner, as it is to inspect tax renditions, hear evidence thereon, and determine and equalize the valuations, which matters are unquestionably county business and properly intrusted to the commissioners' court, acting as a board of equalization."

We conclude, therefore, that the Commissioners Court has original jurisdiction upon a proper application by the taxpayer, or upon information furnished to it by the Tax Assessor-Collector, to determine the validity or invalidity of an assessment; and upon hearing of such application and evidence bearing upon it, the Commissioners Court should determine that an assessment was invalid, it has the power to cancel such an assessment and order a reassessment of the property involved.

This brings us to the immediate question which you present, namely, is the Commissioners Court authorized to reduce the assessments or cancel assessments in part? Our opinion is that the Commissioners Court has no such authority. There are only two kinds of assessments, valid and invalid. In other words, there are not three kinds of assessments, valid, invalid and partially invalid.

The Legislature has attempted by the enactment of Article 7345d, V. R. C. S., to empower the Commissioners Court to reduce or cancel in part assessments previously made without first declaring such assessment invalid, upon proper application and showing, and this we think is unauthorized, as we shall hereinafter point out. This article reads as follows:

"In all cases where property appearing on the tax rolls, whether rendered or unrendered, current or delinquent, appears to have been assessed at a valuation greater than that placed upon other property in such locality of similar value, or out of proportion to the taxable value of such property; or where by reason of the depreciation in the value of such property an adjustment of assessed value would be equitable and expedient; or where by reason of long delinquency, the accumulated delinquent taxes, with penalties, interest, and cost aggregate such amount as to make their collection inequitable or confiscatory, the Commissioners Court of the county in which such property is situated, upon the application of the owner thereof or his duly authorized agent, shall have the power to reopen and reconsider the original assessments. In all such cases, the Commissioners Court shall hear testimony from competent and disinterested witnesses, and may make such personal and independent investigation as may seem necessary and expedient. If, after such investigation it shall appear to the Commissioners Court that such assessments were discriminatory, or out of proportion to the taxable value of the property, or that by reason of the depreciation of value of same, or that the enforced collection of the accumulated delinquent taxes, penalties, interest, and costs would be inequitable or confiscatory, the Commissioners Court may, under its power as a Board of Equalization, make such adjustments as to assessed values of such property as it may determine to be equitable and just. And any previous fixing of values of such property for the years involved shall not be 'res adjudicata' as to the particular case.

Hon. Chas. A. Tosch, page 7

"Provided, that the State Comptroller shall be
furnished with a certified copy of any order passed
in pursuance hereof, as shall likewise the County
Assessor-Collector of Taxes, who shall make the neces-
sary correction of his rolls. Provided further, that
nothing herein shall be construed as authorizing the
Commissioners Court to remit any penalty, interest, or
costs that have accrued, but all such penalty, interest,
and costs shall be collected on the adjusted assessment
as may be authorized by existing law."

This article appears upon its face to authorize the
Commissioners Court to reduce excessive and unreasonable
valuations upon the application of the taxpayer or the Tax
Collector on assessments not declared to be invalid by the
Commissioners Court itself or by a District Court, and to
this extent we think this statute is unconstitutional.
Sec. 55, Art. 3 of the Constitution provides:

"The legislature shall have no power to release
or extinguish or to authorize the releasing or extin-
guishing in whole or in part, the indebtedness, liability
or obligation of any corporation or individual, to this
State, or to any county or any municipal corporations
therein."

Article 8, Sec. 10, of the Constitution provides:

"The Legislature shall have no power to release the
inhabitants of, or property in, any county, city or town
from the payment of taxes levied for State or county
purposes, unless in case of great public calamity in any
such county, city or town, when such release may be made
by a vote of two-thirds of each House of the Legislature."

To hold this article constitutional would be to run
counter to the foregoing provisions of the Constitution. The
Commissioners Court would, in reducing or cancelling in part
such assessments, be assuming authority not even conferred on
the Legislature. The Legislature does have the power to re-
lease delinquent taxes which have accrued over a period of at
least ten years by virtue of Article 3, Section 58, of the
Constitution; but unless the Legislature has granted the
authority thus conferred by this provision of the Constitution
the Commissioners Court is without authority to act.

The question arises, are delinquent taxes an indebtedness, obligation, or liability within the meaning of the language of the Constitution quoted above? If not an indebtedness or obligation, then obviously delinquent taxes constitute a liability, and the Legislature is equally without power to release such liability unless such delinquent taxes are ten or more years past due.

This is the holding in the case of Pioneer Oil & Refining Co., 292 S. W. 869, (Com. App.), reading as follows:

"We do not stop to consider whether a delinquent tax is an 'indebtedness' or 'obligation,' within the meaning of the language quoted, for that it is a 'liability' cannot be doubted. Olliver v. City of Houston, 93 Tex. 206, 54 S.W. 940, 943; City of Henrietta v. Eustis, 87 Tex. 14, 26 S. W. 619."

An assessment of property is an indispensable prerequisite to the validity of a tax, and involves the preparation of a list of the property subject to assessment and taxation; then follows in order a levy, the collection, etc., each is a separate and distinct step in the process of taxation. White v. McGill, 109 S.W.(2d) 1102.

It is conceded in the statement of facts submitted by you that these essential steps were taken by the Assessor and the Commissioners Court (Board of Equalization). Hence, until set aside in some manner provided by law, the assessments remain a liability until their invalidity has been established by the Commissioners Court, or by an order of the District Court in a direct action, or in a suit involving the collection of the taxes. This liability is fixed and established as of January 1st of the years involved, and cannot be reduced or cancelled in part by the Commissioners Court of Dallas County by the indirect method of reducing or adjusting the assessments for the reasons we have heretofore stated.

We do conclude, however, that the Commissioners Court has jurisdiction, upon application of the owner against whom an assessment is made, to determine upon such hearing if such assessment be valid or invalid, and may consider

the question of gross and discriminatory over-valuation; and if found to be invalid, to cancel such assessment and order the assessor to reassess such property. There is →no question that the District Court has jurisdiction and power to pass upon the validity of an assessment based upon excessive valuation, in a suit for the collection of delinquent taxes, or in a direct action by the owner and taxpayer to cancel the assessment; and if adjudged to be invalid, reassessment may be had. State v. Richardson, 84 S. W. (2d) 1076. We are of the opinion that a taxpayer and owner who feels that his constitutional right of equal and uniform taxation guaranteed to him under the Constitution has been violated by an excessive and unwarranted valuation placed upon his property, may have the same reconsidered by the Commissioners' Court, upon proper application and hearing; and if such assessment be found invalid for such reason, to order the assessment cancelled, and the property reassessed; and you are accordingly so advised. The Commissioners Court, however, has no authority to merely reduce or adjust such an assessment.

We doubt the propriety of our attempting to lay down any inflexible rules as a pattern for the Commissioners Court in determining the validity of assessments, for of necessity each case will rest upon its own facts and the sufficiency thereof, but our general views may be gathered from what we have said above.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

D. P. Lollar
Assistant

LPL:AMM

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN